USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-1981

 COONEY INDUSTRIAL TRUCKS, INC.,

 Plaintiff, Appellant,

 v.

 TOYOTA MOTOR SALES, U.S.A., INC.,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert E. Keeton, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Aldrich and Campbell, Senior Circuit Judges.
 
 

 Thomas S. Francis with whom William M. Clark and Law Offices
of Thomas S. Francis were on brief for appellant.
 William N. Berkowitz with whom Daniel L. Goldberg, David
Yamin, Bingham Dana LLP, and David D. Laufer were on brief for
appellee.

February 25, 1999

 
 

 ALDRICH, Senior Circuit Judge. In this action
 Cooney Industrial Trucks, Inc. (CITI) sued Toyota Motor Sales,
 U.S.A., Inc. (Toyota) for breach of contract and unfair
 business practices during the course of a franchise
 relationship. Following trial and receipt of the jury's
 answers to special questions, one of which, under Mass. G.L.
 ch. 93B, favored CITI, but another of which was that CITI
 suffered no damages, the court ruled for Toyota. We affirm.
 Since 1970, CITI purchased and resold Toyota
 forklifts pursuant to consecutive dealer agreements, the last
 of which was executed on October 21, 1992. This agreement
 allowed CITI to sell equipment from other manufacturers but
 required it, by December 31, 1993, to equal or exceed, and
 thereafter maintain, Toyota's national retail market share. 
 When that date arrived, CITI's market share was 7.7%, well
 below Toyota's national market share of just over 15%.
 In early 1994, Toyota removed New Hampshire from
 CITI's Area of Primary Responsibility, a change authorized by
 the dealer agreement, because of CITI's inadequate sales
 performance in that state. Then, on August 15, 1994, Toyota
 advised CITI that, despite CITI's poor sales performance, it
 was willing to offer a new four-month dealer agreement that
 would include the same sales performance requirements but,
 unlike the 1992 dealer agreement, would not provide for the
 automatic granting of a six-year agreement if CITI met the
 stated market share. If CITI met those requirements, however,
 Toyota would consider offering another long-term dealer
 agreement. CITI failed to execute the proposed four-month
 agreement before the previous contract's original end date,
 September 30, 1994, and the franchise relationship terminated,
 after a two-month unilateral extension by Toyota, on November
 30, 1994.
 After deciding to reject Toyota's offer, Mr. Cooney,
 CITI's owner and president, made contact with Mitsubishi
 Caterpillar (Caterpillar), another manufacturer, to discuss
 the possibility of CITI becoming a dealer of Caterpillar
 forklifts. Caterpillar and CITI ultimately executed a sales
 and service agreement on November 7, 1994. According to Mr.
 Cooney, he never had an intention to represent Toyota and
 Caterpillar at the same time, and he negotiated this agreement
 in an attempt to mitigate whatever damage CITI would sustain
 as a result of Toyota's actions.
 In fact, CITI's operations under the Caterpillar
 contract were, allegedly, better than with Toyota. CITI
 requested the court to charge as follows:
 Gains made by the injured party on other
 transactions after the breach are never
 to be deducted from the damages that are
 otherwise recoverable, unless such gains
 could not have been made, had there been
 no breach. 
 Why it wanted the jury to be told of the "unless" portion does
 not appear; it was its position that it did not apply. 
 Thereafter, the court put a special question to the jury, in
 effect applying it:
 The law imposes a duty upon every
 person to take reasonable steps to
 mitigate, or avoid altogether, damages. 
 Under the law, a plaintiff cannot recover
 damages that it has successfully avoided
 through such efforts.
 
 . . . .
 
 If you find that [CITI] successfully
 mitigated or avoided losses by its
 acquisition and operation of the
 Caterpillar dealership you may not award
 as damages any losses so avoided.
 
 The jury so answered, awarding no damages.
 At a post trial hearing the court spelled out its
 thinking: CITI had "benefitted rather than sustained any loss
 or harm from accepting a franchise from Caterpillar that
 prohibited CITI from representing at the same time any
 competitor of Caterpillar, including defendant Toyota." Thus
 the special question was predicated on an implied ruling, or
 conclusion, that CITI fit the "unless" provision because, but
 for Toyota's breach and departure, its presence would have
 prohibited the Caterpillar contract. The case hangs on the
 correctness of that conclusion.
 We consider first some legal principles. To begin
 at the beginning, the court was correct in saying that the law
 imposes on a plaintiff the duty to take reasonable steps to
 mitigate meaning reduce or offset damage. However, the
 duty applies only when the defendant's breach created the
 opportunity to take those steps. If a defendant had agreed
 to pay for plaintiff's personal services and then rejected the
 contract, by freeing plaintiff's time the breach created the
 opportunity to sell his services to someone else, and the
 plaintiff would have the duty to make a reasonable attempt to
 do so. If, however, plaintiff was a stockbroker, and
 defendant's failure to place orders would not have created an
 opportunity to deal with other customers, defendant's breach
 afforded him nothing; he would have had no duty. Hence the
 mitigation rule, footnote 1, ante, which we accept. As the
 Supreme Judicial Court of Massachusetts has said, "[i]t is not
 the policy of our law to award damages which would put a
 plaintiff in a better position than if the defendant had 
 carried out his contract." Ficara v. Belleau, 331 Mass. 80,
 82, 117 N.E.2d 287, 289 (1954). Failing to deduct from a
 plaintiff's award those gains he could not have made had the
 defendant not breached would, of course, violate this
 principle. So we must ask the question: If there had been no
 breach, could CITI have kept Toyota and, at the same time,
 made the profitable contract with Caterpillar?
 CITI correctly asserts that the Toyota contract had
 not forbidden its dealing with Caterpillar. Recognizing that
 there were two sides, CITI's brief noted that Caterpillar
 allowed it to carry competing lines, "if certain conditions
 were met." The conditions were these:
 Dealer [CITI] . . . will not display,
 inventory, demonstrate, or sell
 [competing goods] except (i) by an entity
 separate from Dealer, (ii) under a trade
 name which is different and distinct from
 that of Dealer, (iii) in facilities
 separate and distinguishable from those
 of Dealer, and (iv) by employees other
 than persons who are also employed or
 otherwise furnish personal service to
 Dealer.
 
 In its reply brief CITI is reduced to claiming that these
 conditions could be satisfied by creating a subsidiary
 company: 
 The exception specifically allows CITI,
 through a wholly-owned subsidiary, under
 a different name, in a separate facility,
 and with separate employees to sell
 competitive products.
 We are not told why CITI shortened the actual wording and
 substituted "and with separate employees" for "and (iv) by
 employees other than persons who are also employed by or
 otherwise furnish personal services to Dealer" (emphasis
 added). We would read the emphasized words to mean that Mr.
 Cooney could not even be an unpaid officer of the subsidiary. 
 A greater difficulty, it is not clear from its quoted sentence
 where CITI would place the subsidiary. Is Caterpillar to
 contract with CITI, with Toyota to shift to the subsidiary? 
 It is hard to visualize Toyota accepting such an arrangement. 
 Equally, we cannot think that a prosperous company like
 Caterpillar would itself deal with Cooney through some
 isolated, hypothetical subsidiary. The district court was
 right in holding that CITI contracted with Caterpillar only by
 reason of Toyota's breach and disappearance. Hence the
 mitigation rule's "unless" clause applies.
 We would suggest, further, that even if Caterpillar,
 as well as Toyota, had no objection to competition, it would
 have been totally impractical for CITI to be a dealer for both
 manufacturers simultaneously. As we have seen, Toyota had a
 minimum production requirement that CITI was not meeting. Can
 it be thought that it could have taken on another substantial
 dealership in such circumstances? Mr. Cooney's statement that
 he had never intended being a dealer for both manufacturers
 simultaneously was more than a thought; it was a recognitionof impossibility. We can only think of the present lawsuit
 as a flat attempt to make simultaneous, double collections. 
 CITI's unfairness complaint, that it alone bore the risk of
 the Caterpillar operation's not being successful, overlooks
 the fact that if it had been a failure, Toyota's damage
 liability would not have been offset. What is unfair is CITI
 seeking to have it both ways.
 Attorneys' Fees
 The concept that a plaintiff who has recovered no
 damages or other relief should receive attorneys' fees is so
 unusual that we need a clear showing to support CITI's
 contention that the legislature was so anxious to pursue
 business wrongdoing that it wished to reward discoverers even
 if they had not been harmed themselves. This is far too
 substantial a matter to depend on legal argument; we depend on
 elementary language. Ch. 93B 12A reads, in part, as follows:
 Section 12A. Any franchisee or motor
 vehicle dealer who suffers any loss of
 money or property, real or personal, as a
 result of [listed acts] may bring an
 action in the superior court for damages
 and equitable relief, including
 injunctive relief.
 
 Plainly this means that a plaintiff must show loss to itself,
 not merely the occurrence of a wrongful act. Plainly, also,
 such loss is a predicate for attorneys' fees. Section 12A
 continues:
 If the court finds for the franchisee
 or motor vehicle dealer in any action
 commenced hereunder, that there has been
 a violation of sections three to eleven,
 inclusive, or of any rule or regulation
 issued under paragraph (c) of section
 three, such franchisee or motor vehicle
 dealer shall, in addition to any other
 relief provided for by this section and
 irrespective of the amount, if any,[ ] in
 controversy, be awarded reasonable
 attorneys' fees and costs; . . . . 
 (emphasis added)
 
 Something cannot be "in addition" if there was nothing
 preceding. Cf. Jet Line Services, Inc. v. American Employers
 Ins. Co., 404 Mass. 706, 718, 537 N.E.2d 107, 115 (1989)
 ("[T]he reference to an award 'in addition to other relief'
 indicates that relief solely in the form of attorneys' fees
 may not be had."). Any other result would change the whole
 concept of the statute.
 Affirmed.